IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ERIC SMITH, | : | |
|     Plaintiff, | : | |
| | : | |
|     v. | : | NO. 24-CV-2520 |
| | : | |
| WELLPATH, *et al.*, | : | |
|     Defendants. | : | |

**<u>MEMORANDUM</u>**

**HODGE, J.**                                                                                    **MAY 28, 2026**

Plaintiff Eric Smith, a prisoner currently confined at SCI Phoenix, brings this civil action pursuant to 42 U.S.C. § 1983, claiming that the Defendants—Wellpath (the prison's contract medical services provider), Dr. Annino, Dr. Letizio, PA Kaminski, Britney Huner, M. Savage, ARNS, and RNS Caligiuri—were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment by preventing him from receiving treatment for gynecomastia and the symptoms he suffers as a result of this condition. (ECF No. 1. ("Compl.").) Defendants Wellpath, Dr. Annino, Dr. Letizio, and PA Kaminski ("Wellpath Defendants") have moved to dismiss the claims against them.[1] For the following reasons, the Court will dismiss Smith's claims against the Welllpath Defendants prior to November 11, 2024, while permitting claims after this date to proceed.

## I.       BACKGROUND

### A.  Factual Allegations[2]

---

[1] Defendants Huner, Savage, and Caligiuri have previously filed their Answer to Smith's Complaint. (ECF No. 17.)

[2] The facts set forth in this Memorandum are taken from Smith's Complaint (ECF No. 1). The Court adopts the pagination assigned to the Complaint by the CM/ECF docketing system. Grammar, spelling, and punctuation errors are cleaned up where necessary.

Smith suffers from gynecomastia, having been diagnosed in 2016. (Compl. ¶¶ 12, 52.) He has developed "female-like breasts," and he explains that gynecomastia is "a painful deformity of both breast[s]" that was caused by "his prolonged ingestion of Risperdal and Remeron" as prescribed "by prison doctors." (*Id.* ¶ 12.) Smith alleges that since 2016, he has suffered "daily excruciating pain, discharge from the nipples, mental depression, anxiety, and embarrassment." (*Id.* ¶ 13.) He wraps his breasts every day to cover up the deformity and to avoid being harassed by other prisoners. (*Id.*) He avers that it is difficult for him to look at "himself in the mirror" and he does not "feel comfortable in his own skin." (*Id.*)

Gynecomastia is "an endocrine disorder that is characterized by 'swelling of the breast tissue in boys and men, caused by an imbalance of the hormones estrogen and testosterone.'" (*Id.* ¶¶ 33–34.) Smith contends that at least one physician has defined the condition as "treatable," noting that gynecomastia may be reduced with certain prescription medications. (*Id.* ¶¶ 37–38.) However, he also alleges that "it's best for male patients to consult a board-certified plastic surgeon" to discuss treatment options because "[g]ynecomastia surgery is often the most effective way to reduce breast tissue." (*Id.* ¶ 39 (quoting https://www.gynecomastia.org/gynecomastia-101).)

Smith avers that he has submitted "repeated sick call slips and complaints" since 2016 seeking treatment for gynecomastia and the symptoms it causes him, but Defendants have instead focused on "an abnormality in his brain," and have refused to treat his symptoms. (*Id.* ¶¶ 19, 21, 27.) Smith alleges that an MRI of his brain was conducted in 2016. (*Id.* ¶ 28.) This test was allegedly performed to determine whether he had a "hormone imbalance" that caused him to develop female-like breasts. (*Id.*) Smith claims that the MRI revealed fatty tissue on the brain that was not linked to any hormones. (*Id.*) Although medical personnel have continued to monitor the "fatty tissue growth on [his] brain with yearly MRI examinations," they have continued to ignore

his "painful abnormality of the breasts" and his continuous suffering as a result thereof. (*Id.*) Smith contends that the medical personnel for Wellpath, including Drs. Letizio and Annino, and PA Kaminski, have ignored his complaints of breast pain since 2016 under the guise that they "were still evaluating" him by conducting yearly MRI tests even though they are aware that the fatty tissue on Smith's brain "is not linked to the hormone growth relating to his breasts." (*Id.* ¶ 29.) Smith alleges that he has not been provided with any treatment or medicine for his daily breast pain or nipple discharge, he has not undergone any treatment for depression or anxiety, and he has been denied access to a physician who specializes in the treatment of gynecomastia and/or breast abnormality. (*Id.* ¶¶ 18, 23–24, 27, 32, 53.)

Smith alleges that he still does not know "the specific type of gynecomastia he has been suffering since 2016," and he is not aware if his gynecomastia is the result of cancer or another serious condition "because he has not been provided access to 'a board-certified plastic surgeon[,]' a gynecomastia doctor and/or physician, or an endocrinologist who is medically qualified and trained in responding to and treating gynecomastia in men." (*Id.* ¶¶ 43, 45.) He contends that his condition has remained untreated since its diagnosis in 2016, noting specifically that he has not been provided any treatment options or prescription medications, and his hormonal imbalance, breast growth, and testosterone levels have not been addressed. (*Id.* ¶¶ 43, 46–47, 53.)

### B. Procedural History

Smith filed his Complaint on June 6, 2024. (ECF No. 1.) In his Complaint, Smith brings claims for deliberate indifference to his serious medical needs in violation of the Eighth Amendment based on the refusal to treat his gynecomastia and resulting symptoms, as well as a claim for negligence. He seeks damages and injunctive relief, specifically requesting that he "receive the necessary medical care/treatment for his painful gynecomastia condition and

3

symptoms."[3] (*See id.* at 32.) On August 26, 2024, he was granted leave to proceed *in forma pauperis*, and upon screening pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), the Court dismissed all official capacity claims asserted against Wellpath employees. (ECF No. 8.) The case was stayed pursuant to 11 U.S.C. § 362(a) based on Wellpath's voluntary petition for relief pursuant to Chapter 11 of the Bankruptcy Code. (ECF No. 22.) The stay was lifted on September 10, 2025, following the Confirmation of the Plan of Reorganization in the bankruptcy. (ECF No. 34.)

## II.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. "A 12(b)(6) motion tests the sufficiency of the allegations contained in the complaint." *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993) (citing *Ditri v. Coldwell Banker Residential Affiliates, Inc.*, 954 F.2d 869, 871 (3d Cir. 1992)). In deciding a motion to dismiss under Rule 12(b)(6), the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a

---

[3] To the extent Smith seeks a "declaratory judgment" that Defendants have violated his rights under the Eighth Amendment based on their prior conduct (Compl. at 32), his request is improper. *See Corliss v. O'Brien*, 200 F. App'x 80, 84 (3d Cir. 2006) (*per curiam*) ("Declaratory judgment is inappropriate solely to adjudicate past conduct" and is also not "meant simply to proclaim that one party is liable to another.").

defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted).

In resolving a Rule 12(b)(6) motion, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). To determine whether a complaint filed by a pro se litigant states a claim, a court must accept the facts alleged as true, draw all reasonable inferences in favor of the plaintiff, and "ask only whether that complaint, liberally construed contains facts sufficient to state a plausible . . . claim." *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (citation modified), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024); *see also Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (noting that pro se filings are construed liberally). It is a defendant's burden to show that a complaint fails to state a claim. *See Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (explaining that on a Rule 12(b)(6) motion to dismiss, the "defendant bears the burden of showing that no claim has been presented").

## III.   DISCUSSION

### A.   Deliberate Indifference to Serious Medical Needs

The Wellpath Defendants move to dismiss the Complaint for failure to state plausible Eighth Amendment claims against them. To state an Eighth Amendment claim based on the failure to provide medical treatment, a prisoner must allege facts reflecting that prison officials were deliberately indifferent to his serious medical needs. *See Farmer v. Brennan*, 511 U.S. 825, 834–35 (1994). "A medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity

for a doctor's attention."[4] *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (quotations and citations omitted). "A serious medical need [also] exists where 'failure to treat can be expected to lead to substantial and unnecessary suffering.'" *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (quoting *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991)).

A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Deliberate indifference can be inferred from circumstantial evidence, and is properly alleged "where (1) prison authorities deny reasonable requests for medical treatment, (2) knowledge of the need for medical care is accompanied by the intentional refusal to provide it, (3) necessary medical treatment is delayed for non-medical reasons, [or] (4) prison authorities prevent an inmate from receiving recommended treatment for serious medical needs." *Montanez v. Price*, 154 F.4th 127, 141 (3d Cir. 2025) (quoting *Pearson v. Prison Health Serv.*, 850 F.3d 526, 538 (3d Cir. 2017)), *petition for cert. filed*, 94 U.S.L.W. 3289 (U.S. Mar. 11, 2026) (No. 25-1073). This standard is met when a delay or denial of medically necessary care is intended to inflict pain without medical justification or is based solely on a nonmedical reason, such as cost, without any effort to mitigate harm. *DiFraia v. Ransom*, 171 F.4th 622, 630 (3d Cir. 2026). In contrast, allegations of medical malpractice and mere disagreement regarding proper medical treatment are insufficient to establish a constitutional violation. *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004); *Durmer v. O'Carroll*, 991 F.2d

---

[4] Smith's gynecomastia diagnosis meets these criteria. *See Bryant v. Kaskie*, 744 F. App'x 39, 42 (3d Cir. 2018) (*per curiam*) (concluding that a prisoner's development of gynecomastia constituted a serious medical need). The Wellpath Defendants do not argue otherwise.

64, 67 (3d Cir. 1993). Inadequate care may nevertheless give rise to a deliberate indifference claim when a defendant "act[s] with the requisite state of mind when providing that inadequate care." *Pearson*, 850 F.3d at 535; *see also Palakovic v. Wetzel*, 854 F.3d 209, 228 (3d Cir. 2017) ("[P]rison officials may not, with deliberate indifference to the serious medical needs of the inmate, opt for an easier and less efficacious treatment of the inmate's condition" (quotations and citations omitted)).

The Third Circuit has held that "a private health company providing services to inmates 'cannot be held responsible for the acts of its employees under a theory of respondeat superior or vicarious liability.'" *Sims v. Wexford Health Sources*, 635 F. App'x 16, 20 (3d Cir. 2015) (quoting *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583 (3d Cir. 2003)). However, prison contractors may be liable for constitutional violations brought pursuant to § 1983 only if their policies or customs caused the alleged constitutional violation. *See Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978); *Natale*, 318 F.3d at 583–84. "Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict." *Est. of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)). "Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Id.* (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)). "A plaintiff must also allege that the policy or custom was the 'proximate cause' of his injuries." *Id.* (citing *Kneipp v. Tedder*, 95 F.3d 1199, 1213 (3d Cir. 1996)).

The Wellpath Defendants argue that Smith failed to state a deliberate indifference claim against them because "he was consistently consulting and receiving medical examinations and

7

treatment," and "simply disagrees with the type of treatment he received." (ECF No. 41-2 at 16.) They do not elaborate on their statement that Smith was "consistently consulting and receiving" treatment and have not provided the Court with any details to support their argument that Smith received treatment for gynecomastia. Moreover, their argument that Smith simply disagrees with the type of treatment he receives mischaracterizes the allegations in Smith's Complaint. Taking Smith's liberally construed allegations as true, his claim for deliberate indifference is based on a denial of treatment for gynecomastia and its resulting symptoms, as opposed to solely a claim for inadequate treatment.

Smith alleges that an MRI of his brain was conducted in 2016 to determine whether a hormonal imbalance was causing him to develop female like breasts. (Compl. ¶ 28; ECF No. 47 at 3.) The MRI results revealed fatty tissue that was "not linked to any hormones." (*Id.*) Smith contends he was told by medical personnel that "the fatty tissue on his brain did not have anything to do with his breast pain and growth and that [he] should be patient and let them do their job." (ECF No. 47 at 3.) He asserts that while Defendants have continued to monitor this "brain abnormality" by conducting yearly MRI examinations, he has yet to receive any treatment for gynecomastia or the symptoms it causes him. (Compl. ¶¶ 19, 21, 27.) Smith contends that Dr. Letizio, Dr. Annino, and PA Kaminski have ignored his complaints of breast pain under the guise that they "were still evaluating" him by conducting yearly MRI tests even though they are aware that the fatty tissue on Smith's brain "is not linked to the hormone growth relating to his breasts." (*Id.* ¶ 29.) Smith contends that he "personally informed Dr. Letizio" that the MRIs did nothing for his pain and that he needed treatment, but Dr. Letizio allegedly responded that although "surgery existed" to treat gynecomastia, Smith "would never be approved." (ECF No. 47 at 14.) Smith also

claims that Dr. Annino and PA Kaminsky told him that "treatment would be taken seriously only if [he] were transgender." (*Id.*)

Smith alleges that he has not received any treatment or medication to address his symptoms of daily breast pain and nipple discharge, he has not undergone any treatment for depression or anxiety, and he has been denied access to a physician who specializes in the treatment of gynecomastia in men. (*Id.* ¶¶ 18, 23–24, 27, 32, 43, 45–47, 53.) According to Smith, his gynecomastia has worsened and remains untreated since its diagnosis, noting specifically that he has not been provided any treatment options or prescription medications, and his hormonal imbalance, breast growth, and testosterone levels have not been addressed. (*Id.* ¶¶ 43, 46–47, 53; ECF No. 47 at 3.) Smith asserts that Wellpath told him that because "gynecomastia wasn't life threatening," it did not require surgery and "nothing could be done." (ECF No. 47 at 4.) He alleges, *inter alia*, that Wellpath did not have a policy in place to ensure the "prompt and proper response to, diagnosis of, [and] treatment of gynecomastia in men" and failed to ensure that its medical staff possessed "adequate training, skill or knowledge in the evaluation and management of patients presenting with signs and symptoms of gynecomastia." (Compl. ¶¶ 72, 80–81.)

Smith contends that each of the Defendants were aware of his gynecomastia, but none of them have provided him with any medical care or treatment specific to this condition or the symptoms he experiences daily. The Court concludes that the Wellpath Defendants have not met their burden for obtaining dismissal on the merits.[5] *See Pearson v. Prison Health Serv.*, 850 F.3d

---

[5] The Wellpath Defendants argue that Smith "has failed to allege any facts" demonstrating that he exhausted administrative remedies as required the Prison Litigation Reform Act ("PLRA"). (ECF No. 41-2 at 18.) The PLRA "mandates that prisoners exhaust internal prison grievance procedures before filing suit." *Small v. Camden Cnty.*, 728 F.3d 265, 268 (3d Cir. 2013) (citations omitted); *see also* 42 U.S.C. § 1997e(a). Exhaustion is a non-jurisdictional "standard affirmative defense." *Perttu v. Richards*, 605 U.S. 460, 469 (2025) (citation omitted). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548

526, 535 (3d Cir. 2017) (noting that there is a "critical distinction" between cases alleging inadequate medical treatment and those alleging a complete denial of care).

## B. Wellpath Bankruptcy

Apart from the merits, Wellpath argues that because Smith challenges conduct pre-dating Wellpath's filing for bankruptcy on November 11, 2024, his claims against it are discharged pursuant to a Chapter 11 Plan of reorganization confirmed by the Bankruptcy Court (the "Plan"). (ECF No. 41-2 at 1, 4–10.) Dr. Letizio, Dr. Annino, and PA Kaminsky, "as current/former employees of Wellpath," argue that claims against them are released by the Third-Party Release incorporated into the Plan because Smith did not timely opt out of the Release. (*Id.*) Smith asserts that the bankruptcy discharge does not "apply because [he] never received constitutionally

---

U.S. 81, 90 (2006); *Prater v. Dep't of Corr.*, 76 F.4th 184, 203 (3d Cir. 2023) (courts "determine whether a prisoner has properly exhausted a claim by evaluating the prisoner's compliance with the prison's administrative regulations governing inmate grievances" (internal quotation marks omitted)). Claims that are not properly exhausted under the PLRA are procedurally defaulted. *See Woodford*, 548 U.S. at 92–93.

Smith alleges in his Complaint that he "exhausted his administrative remedies with respect to all claims and defendants." (Compl. at 31, ¶ 84.) In his Response to Defendants' Motion to Dismiss, Smith attaches his grievances and documents associated with grievance appeals to the Facility Manager and the Secretary's Office of Inmate Grievances and Appeals. (*See* ECF No. 47 at 18–27.) "[W]here a defendant moves to dismiss based on a failure-to-exhaust defense and the exhaustion issue turns on indisputably authentic documents related to the inmate's grievances, [a court] may consider those documents without converting a motion to dismiss to a motion for summary judgment." *Rinaldi v. United States*, 904 F.3d 257, 261 n.1 (3d Cir. 2018) (citation modified) (quoting *Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004)). Defendants did not file a reply addressing the exhaustion requirement further. Nor do they allege that Smith did not follow proper procedures to exhaust his administrative remedies. They argue only that Smith did not allege any facts that he fully exhausted his claims. But exhaustion is a non-jurisdictional affirmative defense, meaning that Smith had no pleading burden on this issue. *James v. Global Tel\*Link Corp.*, No. 13-4989, 2020 WL 998858, at \*3 (D.N.J. Mar. 2, 2020) ("Plaintiffs need not plead around affirmative defenses to survive a 12(b)(6) motion.") (citing *Schmidt v. Skolas*, 770 F.3d 241, 252 (3d Cir. 2014) ("The District Court effectively required Schmidt to plead around an affirmative defense in his complaint, which is inconsistent with Rules 8 and 12(b)(6). . . .")). He nonetheless submitted documents to demonstrate that he did. At this stage of the litigation, the Court must accept Smith's exhaustion allegations as true, and Defendants' Motion will be denied on this basis.

adequate notice" and his ongoing claim for "Eighth Amendment violations cannot be released through a bankruptcy plan." (ECF No. 47 at 5–7.)

Wellpath was discharged from liability by the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Bankruptcy Court"), for claims that arose prior to November 11, 2024.[6] *See In Re Wellpath Holdings, Inc.*, No. 24-90533 (Bankr. S.D. Tex.), Dkt. Nos. 2596, 2679, 2680; *see also* 11 U.S.C. § 524(a)(2) ("A discharge in a [Chapter 11 bankruptcy] case . . . operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived."). As part of Wellpath's Chapter 11 Reorganization Plan (the "Plan"), a Liquidating Trust has assumed Wellpath's liability "for all General Unsecured Claims," including personal injury and wrongful death claims—such as those pursued by Smith—covered by the discharge injunction. *See* Order Confirming Ch. 11 Plan, *In re Wellpath Holdings*, No. 24-90533 (Bankr. S.D. Tex. May 1, 2025), Dkt. No. 2596 at 107 (Assumption of General Unsecured Claims by the Liquidating Trust). To be eligible for compensation from the Liquidating Trust, a claimant must "have timely filed, or have been deemed to have timely filed, or have obtained appropriate leave from the Bankruptcy Court to file late, a Proof of Claim with the Bankruptcy Court" that is signed under penalty of perjury.[7] *See* Trust

---

[6] The Court may take judicial notice of the bankruptcy proceedings. *See Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 416 n.3 (3d Cir. 1988).

[7] Personal injury claimants who have filed proof of their claim in accordance with the Plan may proceed with non-binding alternative dispute resolution as envisioned by the Trust Distribution Procedures. *See* Trust Distribution Procedures, *In re Wellpath Holdings*, No. 24-90533 (Bankr. S.D. Tex. May 1, 2025), Dkt. No. 2679. Alternatively, they may proceed with unsecured claims "in the appropriate civil court and litigate such claim with the Trust included as a nominal defendant." Revised and Amended Clarifying Order, *In re Wellpath SF Holdco*, No. 24-90566 (Bankr. S.D. Tex. Jan. 25, 2026) (citation modified); *see Thomas v. Clark County*, No. 22-00899, 2026 WL 891891, at *8 (D. Nev. Mar. 31, 2026).

Distribution Procedures, *In re Wellpath Holdings*, Dkt. No. 2679 at 351; *see also Howard v. Wellpath, LLC*, No. 23-5140, 2026 WL 881708, at *7 n.12 (E.D. Pa. Mar. 31, 2026) ("Howard should note that he may not be able to recover any damages from the Liquidating Trust unless he has filed a proof of claim."). Smith does not allege that he filed a proof of claim in accordance with the Plan procedures. Further, nothing in the record nor the Bankruptcy Court's docket suggests that he filed a proof of claim. Accordingly, his claims against Wellpath based on pre-petition conduct will be dismissed. *See Pew v. Letizio*, No. 24-5981, 2026 WL 838309, at *1 (E.D. Pa. Mar. 26, 2026) ("Because Pew's claim arises from alleged conduct in 2022, it is a preconfirmation claim subject to the confirmed plan and discharge injunction. Pew therefore may not continue this action against Wellpath.").

The Plan also includes a Third-Party Release that precludes personal injury or wrongful death claims against current and former employees of Wellpath, such as Dr. Letizio, Dr. Annino, and PA Kaminsky, based on pre-petition conduct. *See* Order Confirming Ch. 11 Plan, *In re Wellpath Holdings*, No. 24-90533 (Bankr. S.D. Tex. May 1, 2025), Dkt. No. 2596 at Article IX.D. A claimant who does not want to be precluded from pursuing claims against Wellpath employees per the Third-Party Release was required to file a timely "Opt-Out" in accordance with the Plan. *Id.* at Article IX.F; *see also id.* at Article I.A.177–78 (defining "released parties" and "releasing parties"); *see also* General Form of Order Regarding Lift Stay Motions, *In re Wellpath Holdings*, No. 24-90533 (Bankr. S.D. Tex. May 1, 2025), Dkt. No. 2907, ¶ 6 (extending deadline to July 30, 2025, for incarcerated individuals with potential claims to file an opt out). The Wellpath Defendants aver that Smith did not file the required "opt out" and although Smith has responded that he did not receive appropriate notice, he does not contradict Defendants' representation that he did not timely opt out.

Because Smith did not file the required "opt out," his claims are subject to the Third-Party Release. Accordingly, the Court will dismiss Smith's claims against Dr. Letizio, Dr. Annino, and PA Kaminsky based on conduct occurring before November 11, 2024, that is subject to the Release.[8] *See Davis v. Amour*, No. 23-00593, 2026 WL 820668, at *2 (W.D. Va. Mar. 25, 2026) (observing that, pursuant to the plan, "any claimholder who did not affirmatively opt out of the third-party release is permanently enjoined from pursuing claims against [Wellpath employees] as they would be against Wellpath itself" and that "several courts . . . have dismissed claims against individual Wellpath employees where the plaintiff did not opt out of the third-party release" (citing cases)); *Thomas v. Sorber*, No. 23-907, 2026 WL 753594, at *6 (E.D. Pa. Mar. 17, 2026) ("Because Mr. Thomas has not provided any evidence that he timely opted out of the Third-Party Release, I must conclude that Dr. Bazel has been released and discharged from any claims arising out of the events pleaded in the Complaint.").

Smith presents facts suggesting he may not have received adequate notice of his opportunity to opt out of the Third-Party Release. This Court, however, is unable to consider such arguments or provide a remedy. Rather, this argument or any arguments regarding the validity of the third-party release can only be addressed by the Bankruptcy Court. *Davis*, 2026 WL 820668, at *3 (citing, *inter alia*, *Patterson v. Mahwah Bergen Retail Grp.*, 636 B.R. 641 (E.D. Va. 2022)); *cf. In re Smallhold, Inc.*, 665 B.R. 704, 717–26 (Bankr. D. Del. 2024) (discussing the consent requirement for third-party releases following *Harrington v. Purdue Pharma L.P.*, 603 U.S. 204 (2024)); *see also Jones v. Hawes*, No. CV 123-160, 2025 WL 4072112 (S.D. Ga. Dec. 22, 2025),

---

[8] Because the Court has concluded that dismissal of Smith's claims regarding conduct occurring before November 11, 2024 is warranted, there is no need to address Defendants' contention that the statute of limitations has run on claims that are alleged to have occurred between 2016 and June 5, 2022.

*report and recommendation adopted*, 2026 WL 174950 (S.D. Ga. Jan. 22, 2026) ("The [Wellpath] Bankruptcy Plan provides any request for relief relating to service or the opt-out procedures must be raised in and resolved by the bankruptcy court.").

However, the bankruptcy proceeding does not affect claims based on any denial of care occurring after Wellpath filed for bankruptcy. Indeed, Smith's Complaint alleges that he seeks injunctive relief in the form of prospective "medical care/treatment for his painful gynecomastia condition and symptoms" including "access to a board-certified plastic surgeon, a gynecomastia doctor and/or physician, or an endocrinologist for necessary medical care/treatment." (*See* Compl. at 32.) Moreover, his Complaint suggests that his injuries remain ongoing. In other words, the Complaint may reasonably be read to seek relief for ongoing conduct post-dating Wellpath's filing for bankruptcy. Accordingly, to the extent the Complaint is based on the ongoing denial of care, Smith's claims may proceed as to conduct occurring after November 11, 2024 as to the Wellpath Defendants.

## IV.   CONCLUSION

For the foregoing reasons, the Court will grant Defendants' Motion in part for those claims based on conduct occurring prior to November 11, 2024 were discharged or released in bankruptcy, and deny the Motion as to claims based on conduct that took place on or after November 11, 2024. The dismissed claims against Wellpath, Dr. Letizio, Dr. Annino, and PA Kaminsky will be dismissed without prejudice to Smith obtaining any relief that may be available to him through the Bankruptcy Court. An appropriate Order follows.

**BY THE COURT:**

**/s/ Hon. Kelley B. Hodge**

_____

**KELLEY BRISBON HODGE, J.**